**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael J. BRUECKNER,
Defendant-Appellant.**

**No. 41884.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 3, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Application to Transfer Denied
July 14, 1981.

Charles C. Schwartz, Jr., Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Nancy D. Kelley, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

DOWD, Judge.

A jury found defendant Michael J. Brueckner guilty of robbery in the first degree, in violation of Section 560.120 RSMo 1969. Defendant was sentenced under the Second Offender Act to twelve years imprisonment. Defendant appeals.

On February 14, 1978 a man wearing a green fatigue jacket, sunglasses, hat and scarf entered a Glaser Drug Store located in Bridgeton, Missouri. The man handed a note to the pharmacist in the store, Mark Hall, which said, "The store is covered. If your smart, do as you're told. No one will be hurt. Give me all you dilaudid and Class A drugs." The man was pointing a gun at him. Mr. Hall proceeded to give the man seven bottles of dilaudid from the store's drug cabinet and the man left the store. At trial, Mr. Hall and another store clerk testified that they did not believe defendant was the person who had displayed the gun during the robbery.

There was testimony at trial by a young man who had been sitting in his car in a parking lot adjacent to the Glaser Drug Store at the time of the robbery. This witness had observed a blue van parked with its engine running in an alley near the drug store. Suddenly a man came running around the corner of the building and signalled for the van to pull up. When the van pulled up the man quickly jumped in. The witness then copied the license plate number of the blue van and later gave it to the police. Defendant was later identified as the owner of the van.

Approximately thirty minutes after the robbery police officers stopped the blue van which had earlier been parked near the Glaser store. Defendant was the driver of the van. As the police approached the van they noticed the passenger in the van, Danny Amsden, appeared to remove something from his pocket and then bend forward below the seat. Defendant gave the police officers permission to search his van. The police found a bottle of pills under the right front seat. This bottle was later identified as having been taken during the robbery of the Glaser Drug Store.

Defendant initially denied any knowledge of the robbery and was released from police custody. On February 16th defendant returned to the Bridgeton Police Station accompanied by a friend, Sandra Taylor. He talked with Detectives Bishop and Kuykendall at the police station. Detective Kuykendall first advised defendant of his rights and defendant said he understood them. Defendant then complained to the police that while he had been in police custody someone had removed some expensive items from his residence. According to the detectives, defendant then stated that the drugs taken in the robbery were the missing items he was complaining about. Defendant told the detectives that on February 14th he and Danny Amsden decided "to do a stickup". Amsden got a green fatigue jacket and a gun and they drove to the Glaser Drug Store. When Amsden returned from the store they drove to defendant's house and hid the drugs. They left the house and shortly thereafter were stopped by the police.

Defendant was not arrested after making this statement. The next day, February 17th, defendant again talked with the de-

tectives. He was again advised of his rights and acknowledged he understood them. Defendant then made a written statement. In this statement he said that he had gone to Danny Amsden's house on the day of the robbery. There, Amsden's wife wrote the note used in the robbery. Amsden made up a disguise of a wig, hat and scarf and also got a gun. After defendant and Amsden left the drug store they went to defendant's house and hid the drugs.

At trial, defendant denied participating in or having any knowledge of the robbery until after the robbery occurred. He testified that he was parked near the Glaser store on the day of the robbery and that Danny Amsden was with him. Defendant said that he believed Amsden was going to get some food when he left the van. Defendant also testified that Amsden walked up to the van upon his return, and that defendant had not driven up to meet him. Defendant testified that some of the information in his written statement, such as knowing about the disguise and the gun were lies, and that he had only learned of those things at a later time. Defendant also testified that Detective Bishop had struck him several times in the jaw and told him that if he cooperated no warrant would be issued for his arrest. Bishop also allegedly told defendant that he would talk to defendant's probation officer and nothing would happen to defendant. Sandra Taylor testified that Detective Bishop had told her that if defendant cooperated the police would not issue a warrant for him. Detective Bishop testified and specifically denied making any of the statements attributed to him.

On this appeal defendant contends that the trial court erred in (1) admitting defendant's oral and written statements into evidence (2) failing to declare a mistrial after the assistant prosecuting attorney allegedly made an improper comment on defendant's constitutional right to remain silent, and (3) overruling defendant's motion for judgment of acquittal because the evidence was insufficient to support his conviction of robbery in the first degree.

Defendant first contends that the trial court erred in admitting evidence of the oral and written statements, because the trial court denied defendant's request for a hearing outside the presence of the jury to determine the voluntariness of the statements in issue. The record before this court indicates that a pre-trial hearing on defendant's motion to suppress statements was heard and overruled by Judge Saitz on February 16, 1979. At trial, defendant requested another hearing concerning the statements, and stated that he intended to call Detectives Bishop and Kuykendall to show proper *Miranda* warnings were not given to defendant prior to the making of either statement. Judge Franklin Ferriss, the trial judge, after noting that a pre-trial hearing had been held on defendant's motion to suppress concluded that a second similar hearing was not necessary.

■ There is a Fourteenth Amendment requirement as construed in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) that an accused may object to the use of his confession and obtain a hearing to determine whether the confession was given voluntarily. In the present case defendant had received a hearing on the admissibility of the statements. There is no requirement for a second hearing concerning the admissibility of defendant's statements, at least when there has been no showing of new evidence to be presented by either party. *State v. Worthon*, 585 S.W.2d 143, 145 (Mo.App.1979); *State v. Lewis*, 526 S.W.2d 49, 53–54 (Mo. App.1975). *See Lewis v. Gourley*, 560 F.2d 393 (8th Cir.) *cert. denied*, 434 U.S. 987, 98 S.Ct. 618, 54 L.Ed.2d 483 (1977); *United States v. Scott*, 524 F.2d 465 (5th Cir. 1975). Defendant did not assert to the trial court that he desired to submit any new evidence which was not presented in the hearing. On the record before us we can find no error in the trial court's failure to grant a second hearing.

Defendant also argues the trial court erred in admitting the statements because there was not an adequate finding on the

record that the statements were voluntarily made, and that the statements were not freely and voluntarily given. In support of defendant's inadequate finding of voluntariness argument, he directs our attention to the trial judge's statements in denying defendant's request for a second hearing. The trial judge concluded that the motion to suppress statements had been overruled and a second similar hearing was not necessary. Defendant argues that this statement by the trial judge was too broad, and a sufficient finding of voluntariness does not appear on the record. We believe, however, that our focus must be on the findings adduced at the pre-trial evidentiary hearing on the challenged statements.

■ On this appeal, defendant has not provided this court with a transcript of the pre-trial hearing on his motion to suppress statements which was heard and overruled. It was defendant's responsibility to provide those portions of the record and proceedings necessary to the determination of all questions presented to the reviewing court for decision. Rule 81.12(a). Absent the record of the hearing we are unable to review defendant's final two assertions of error relating to the admission of his statements at trial. *State v. Smith*, 612 S.W.2d 895 (Mo.App.1981); *State v. Harris*, 564 S.W.2d 561 (Mo.App.1978).

Defendant next contends that a remark by the assistant prosecuting attorney during trial was an impermissible comment on defendant's constitutional right to remain silent and it had the effect of denying him a fair trial.

At trial, during the direct examination of defense witness Sandra Taylor, the following exchange occurred:

"Q. And did Michael [the defendant] say anything?

A. [Sandra Taylor]: He said that he had no part of it.

MR. BARRY [Assistant Prosecuting Attorney]: Objection. Hearsay, your Honor. *Hopefully, Mr. Brueckner will be able to tell us that in his own words—*

MR. SCHWARTZ [Defendant's attorney]: Judge, may we approach the bench?

MR. BARRY:—as Mr. Schwartz has indicated.

MR. SCHWARTZ: May we approach the bench, your Honor?

THE COURT: You may.

(Counsel approached the bench and the following proceedings were held outside the hearing of the jury:)

MR. SCHWARTZ: Judge, at this time I'd move for a mistrial because of the comments of counsel about the right of defendant to testify or not to testify. It was an unsolicited remark of counsel.

(To reporter:) Do you have it in the record? 'Hope that Mr. Brueckner will—'

At this time I'd ask for a mistrial that I believe said comments infringes upon this defendant's right to remain silent.

MR. BARRY: I'd point out, your Honor, that Mr. Schwartz in his opening statement, he said that his client would testify and that the jury would hear from him what happened.

MR. SCHWARTZ: Point out to the jury, Judge, that I said I expect him to do so, not that he would; and I didn't say one word of what he would testify to. I believe that was an uninvited comment of counsel on the defendant's right to refrain from testifying in this case...." (Emphasis added.)

Defendant's request for a mistrial was denied. The trial court did, however, instruct the jury to disregard the prosecutor's comment.

■ The Missouri Constitution, Article I, § 19, provides, in part, "That no person shall be compelled to testify against himself in a criminal cause, ..." This constitutional provision prohibits direct or indirect comments on the failure of a defendant to testify. *State v. Reed*, 583 S.W.2d 531, 534 (Mo.App.1979). This language has also been construed to prohibit comments which have the effect of compelling a defendant to testify. *State v. Lindsey*, 578 S.W.2d 903, 904 (Mo. banc 1979).

In the present case defendant did testify on his own behalf. Based on the statements of counsel reproduced above, it is apparent that defendant's attorney made some reference during his opening statement to the defendant testifying.[1] Thus, the prosecuting attorney's statement, "Hopefully, Mr. Brueckner will be able to tell us that in his own words—" was made to support the hearsay objection and was directed to the trial court and not the jury.

In examining an allegation of an improper comment on a defendant's right to remain silent the reviewing court must view the challenged comment in the context in which it appears. The evaluation of the prejudicial impact of a particular statement is a matter within the discretion of the trial court. *State v. Bufalo*, 562 S.W.2d 114, 118 (Mo.App.1977). In addition, an instruction to disregard the comment may cure any error in a particular case. *State v. Rothaus*, 530 S.W.2d 235, 238 (Mo. banc 1975); *State v. Frankoviglia*, 514 S.W.2d 536, 539 (Mo. 1974).

After reviewing the context in which the prosecutor's remark arose in this case we conclude the trial court did not err in denying defendant's request for a mistrial. The remark clearly was not a direct or indirect reference to defendant's failure to testify. Nor do we believe that this remark was of such a nature as to compel defendant to testify. Also, the comment was a reference to the remark made by defendant's attorney in his opening statement. Finally, the trial court's instruction to disregard the comment would be sufficient in these circumstances to cure any error. The prosecutor's statement could not have had such an effect on the jury as to deny defendant a fair trial. We find defendant's contention concerning the prosecutor's statement in issue to be without merit.

Defendant's final contention is that the trial court erred in overruling his motion for judgment of acquittal at the close of the state's case and at the close of all the evidence because there was insufficient evidence to support a conviction for robbery in the first degree. Defendant offered evidence on his behalf and thereby waived any claim of error as to his motion for acquittal at the close of the state's case. *State v. Marshall*, 571 S.W.2d 768, 773 (Mo. App.1978). In reviewing the sufficiency of the evidence we accept as true all evidence in the record tending to support the jury's finding of defendant's guilt, together with all favorable inferences that can reasonably be drawn therefrom and disregard all contrary evidence and inferences. *State v. Morgan*, 592 S.W.2d 796, 805 (Mo. banc 1980).

Defendant argues that there was insufficient evidence to show that he participated in the commission of the robbery. We disagree. Proof of any form of affirmative participation in the robbery is sufficient to support defendant's conviction. *State v. Puckett*, 612 S.W.2d 242 (Mo.App. 1980). Presence, companionship and conduct before and after the offense are circumstances from which one's participation can be inferred. *State v. Nickelson*, 546 S.W.2d 539, 543 (Mo.App.1977).

In the present case, defendant was in the vicinity of the Glaser Drug Store when the robbery occurred. Some of the stolen goods were found in his motor vehicle a short time after the robbery was committed. Defendant told the police that he and Amsden agreed to commit a robbery. Thereafter, the note used in the robbery was written and Amsden prepared a disguise and brought a gun. Defendant's admissions constitute direct evidence of his guilt. *State v. Bartley*, 501 S.W.2d 519, 520–521 (Mo.App.1973). We find there was sufficient substantial evidence to support a jury's verdict and the trial court did not err in overruling defendant's motion for judgment of acquittal at the close of all the evidence.

Judgment affirmed.

STEPHAN, P.J., and STEWART, J., concur.

---

1. We are unable to ascertain what was said during defendant's opening statement because that portion of the trial was not incorporated into the transcript on this appeal.